**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　　:　　　　CRIMINAL NO.:
　　　　　　　　　　　　　　　　　　　:　　　　3:01CR00056 (EBB)
KEITH ROBERTSON　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:　　　　DECEMBER 8, 2004

<u>**MEMORANDUM IN AID OF SENTENCING**</u>

　　　　Keith Robertson submits this Memorandum as an aid to the Court in sentencing and in support of his request for a sentence of probation. Part I of this Memorandum briefly addresses the defendant's adjusted offense level within the guidelines. Part II addresses the issue of the defendant's request for a sentence of probation.

　　　　Keith Robertson is the sole defendant charged in a one-count Information brought in this case. He was charged with the misdemeanor of Failure to Provide Information and Pay Taxes, in violation of 26 U.S.C. §7203. The charges against Mr. Robertson stem from an investigation into "The Committee to Elect Ben F. Andrews" (hereafter "Andrews Campaign") as Connecticut Secretary of State, where Mr. Robertson briefly worked as campaign manager beginning in June 1998 to late August 1998. During his short tenure with the Andrews Committee, Mr. Robertson agreed with other individuals to unlawfully support the "Paul J. Silvester for Treasurer" campaign (hereafter "Silvester Campaign") by accepting cash from an individual connected with the Andrews Campaign, contributing the cash to the Silvester Campaign through another individual, who then made an unlawful financial

1

contribution to the Silvester Campaign.  In October 1998, Mr. Robertson also used his own cash to unlawfully contribute to the Silvester Campaign by similarly using individuals as conduits.

Between approximately July and October of 1998, Mr. Robertson was paid a total of $9,500.00 in consulting fees and expense reimbursements from the Andrews Campaign. However, the Andrews Campaign never issued Mr. Robertson a Form 1099 as required by law, and Mr. Robertson failed to supply the information concerning the income and expenses received from the Andrews Campaign to the IRS on his 1998 Form 1040 income tax return. (Pre-Sentence Report (hereafter "PSR") at ¶¶ 4-7, 10).  Because Mr. Robertson incurred $2,000.00 in legitimate out-of-pocket campaign expenses during his work on the Andrews Campaign, Mr. Robertson effectively failed to report $7,500.00 in income to the IRS. (PSR at ¶ 8).

As detailed more fully below, Keith Robertson respectfully requests that because of his substantial assistance to the Government, his aberrant conduct and naiveté in committing this offense, his family ties and circumstances, combined with his past record of public service and possible inability to work in his chosen profession in public finance, that the Court impose a sentence of probation in this matter.

**Part I - Adjusted Offense Level Within the Guidelines.**

On February 28, 2001, Keith Robertson appeared in the United States District Court at Hartford, Connecticut, before the Honorable Dominic J. Squatrito, United States District Judge, and entered a guilty plea to Count One of the Information, charging failing to provide

2

Information to the Internal Revenue Service (IRS) in violation of 26 U.S.C. § 7203. (PSR at ¶ 1).

Mr. Robertson has remained at liberty pursuant to a personal recognizance bond since his guilty plea. (PSR at ¶ 2). He is allowed to travel outside of the District of Connecticut for personal and business purposes without prior permission from the Court, provided he notifies the United States Probation Office in advance of his travel plans. (PSR at ¶ 2). The Probation Office reports that Mr. Robertson is in compliance with the conditions of his pretrial release. (PSR at ¶ 2).

In the PSR, the Probation Office calculated Mr. Robertson as having a base offense level of 7 for tax evasion involving $7,500.00. (PSR at ¶ 12). The Probation Office determined that §§2T1.1(a)(1), 2T4.1 (tax table) and 2T1.1(c)(1) establish a tax loss based upon 28% of $7,500.00 in unreported income, resulting in an estimated tax loss of $2,100.00. (PSR at ¶ 12)[1]. The Probation Office determined that §2T4.1(B) established a base offense level of 7 for a tax evasion offense involving a tax loss of between $1,700.00 and $3,000.00. (PSR at ¶ 12).

The Probation Office found no aggravating circumstances or other specific offense characteristics that would warrant an upward enhancement. (PSR at ¶ 13-17). Because of Mr. Robertson's timely admission of responsibility and full, complete and truthful disclosure of the circumstances surrounding the commission of this offense, his criminal history and his personal finances, the Probation Office recommends a two level reduction in the base offense

---

1 The Defendant initially objected to Paragraph 12 of the PSR. The Defendant withdraws his objection.

level for acceptance of responsibility in the offense pursuant to U.S.S.G. §3E1.1(a), (PSR at ¶¶3, 10, 18), giving Mr. Robertson a Total Offense Level of 5. (PSR at ¶19).

The Probation Office determined that Mr. Robertson has no prior criminal history. (PSR at ¶20). Pursuant to the Sentencing Table, Mr. Robertson therefore has 0 criminal history points, establishing a criminal history category of I. (PSR at ¶21).

Based upon a total offense level of 5 and a criminal history category of I, the Sentencing Guidelines imprisonment range is 0 to 6 months. (PSR at ¶ 59). The statutory maximum term of imprisonment is one year pursuant to 26 U.S.C. §7203. (PSR at ¶ 58). The maximum statutory fine that may be imposed in this matter is $25,000.00. 21 U.S.C. §7203; (PSR at ¶ 64). The defendant is also subject to the alternate fine provision of 18 U.S.C. §3571, which imposes a maximum amount of $100,000.00. (PSR at ¶64). Mr. Robertson is also subject to a mandatory special assessment of $25.00 pursuant to 18 U.S.C. §3013(A)(iii). (PSR at ¶64). The Guidelines fine range in this matter is $250.00 to $5,000.00 pursuant to U.S.S.G. §5E1.2(c)(3). (PSR at ¶65). If a term of imprisonment is imposed, a term of supervised release of 1 year may be imposed pursuant to 18 U.S.C. §3583(b)(3). (PSR at ¶ 60).[2] The Sentencing Guidelines range for supervised release is 1 year pursuant to U.S.S.G. §5D1.2(a)(3). (PSR at ¶ 61). Restitution is not applicable in this case. (PSR at ¶67).

Because this matter is a Class A misdemeanor, Mr. Robertson is eligible for a term of probation of not more than 5 years pursuant to 18 U.S.C. §3561(c)(2). (PSR at ¶62). The

---

2 In the alternative, if the Court issues a sentence of probation to the Defendant, an order concerning supervised release is unnecessary.

Sentencing Guidelines provide for a term of probation of not more than 3 years.  U.S.S.G. §5B1.2(a)(2). (PSR at ¶63).

**Part II – Defendant's Request for a Sentence of Probation.**

      **A.**    **Based on the Defendant's Substantial Assistance to Law Enforcement Authorities.**

Keith Robertson's substantial assistance and cooperation with law enforcement authorities enables the Court to exercise its discretion in sentencing.  A defendant may receive a departure[3] from a sentencing recommendation pursuant to U.S.S.G. §5K1.1 upon motion by the Government setting forth the defendant's substantial assistance[4].  Although Mr. Robertson's Sentencing Guidelines imprisonment range is already in the 0 to 6 months range (PSR at ¶ 59), the defendant requests that the Court take notice of his eligibility for a downward departure pursuant to the Government's anticipated Substantial Assistance Motion under §5K1.1 as grounds for sentencing the defendant to a term of probation.

Mr. Robertson has cooperated with federal authorities in their investigation of this matter as well as the investigation concerning Ben F. Andrews, a former Connecticut political figure and candidate for Connecticut Secretary of State.  On numerous occasions, Mr. Robertson provided information to the Government concerning his involvement in the instant

---

3 Because Keith Robertson's offense places him in the Sentencing Guidelines' imprisonment range of 0 to 6 months, which is Zone A, he is not requesting a downward departure in the literal sense.  Instead, Mr. Robertson employs the arguments for downward departure as a basis for requesting a sentence of probation, or in the alternative, a sentence to the low end of the Guidelines range.

4 To date, the Government has not filed its motion pursuant to U.S.S.G. §5K1.1.  However, the defense anticipates that the Government will file said motion before Mr. Robertson's sentencing hearing.

offense, as well as valuable information concerning his knowledge of certain activities and practices of Mr. Andrews. Keith Robertson met with the Government in various proffer sessions and pre-trial meetings to help prepare the Government's case against Mr. Andrews. Keith Robertson's cooperation culminated in his testimony as a witness for the Government at the jury trial of Mr. Andrews, where Andrews was convicted on November 4, 2003 concerning charges of bribery involving federal programs, frauds and swindles, money laundering and making false statements. See Criminal Docket for Case 3:00-cr-00217-(EBB). Based upon this cooperation, information and assistance to the Government, Mr. Robertson respectfully requests that this Court take due notice of his efforts and sentence him to a term of probation.

**B.    Based on Extraordinary Circumstances**

The defendant submits that circumstances are present in this case which, together and in combination, are "of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission" and warrant a sentence of probation. See 18 U.S.C. § 3553(b); U.S.S.G. §5K2.0.[5]

"The Second Circuit has emphasized that a district court not only can, but must, consider the possibility of a downward . . . departure 'when there are compelling considerations that take the case out of the heartland factors upon which the Guidelines rest.'"

---

5 The Comment to § 5K2.0 states in pertinent part: "The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of [offender characteristics or other circumstances not ordinarily considered relevant], differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. . . ." See also Koon v. United States, 518 U.S. 81 (1996).

United States v. Somerstein, 20 F.Supp.2d 454, 460 (E.D.N.Y. 1998) (quoting United States v. Monk, 15 F.3d 25, 29 (2d Cir. 1994)).  The Second Circuit has also recognized that "[i]n extraordinary cases . . . the district court may downwardly depart when a number of factors that, when considered individually, would not permit a downward departure, combine to create a situation that 'differs significantly from the 'heartland' cases covered by the guidelines.'"  United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996) (quoting U.S.S.G. §5K2.0, Commentary).  "The Guidelines . . . 'place essentially no limit on the number of potential factors that may warrant a departure.'"  Koon v. United States, 518 U.S. 81, 106 (1996) (quoting Burns v. United States, 501 U.S. 129, 136-137, (1991)).

**Personal Background:**

Keith Robertson was born on January 8, 1970, the second of three children born to Philip Robertson, now age 61 and Maureen (nee Pryor) Preuss, now age 60. (PSR at ¶ 23). Keith has an older sister, Suzanne Hanlon, age 36, who lives in Bolton, Connecticut, and works as a financial aid officer for the University of Connecticut at Storrs (PSR at ¶ 31), and a younger brother, Marc Robertson, who works as a physical therapist. (PSR at ¶ 31).  Keith Robertson also has two half-siblings from his mother's second marriage, with whom he maintains a friendly relationship. (PSR at ¶ 32).

Keith Robertson's parents were married in February of 1967.  They raised their three children in a close-knit family environment (PSR at ¶ 26, 29) until 1978 when Philip Robertson moved out of the family home preceding a divorce and bitter, tumultuous custody

battle for the Robertson children. (PSR at ¶ 26, 27).  Although close to both his parents (PSR at ¶ 29, 30), Keith Robertson was particularly close to his father growing up and experienced substantial difficulty with his father's absence from the family home, worrying about his father's well being and developing feelings of insecurity. (PSR at ¶ 26, 27).  Keith would call his father twice daily, once in the morning and once in the evening, to make sure he was alright. (PSR at ¶ 26, 27).  Keith was a very nervous child and developed a speech stutter and nervous body twitch as a result, something he has only recently been able to overcome. (PSR at ¶ 26).

Keith's mother reports that her former husband was "an emotional abuser of his family" (PSR at ¶ 27), and that this abuse had an effect on everyone, especially Keith. (PSR at ¶ 27).  Mr. Robertson attributes his conduct, in part, to his own background from a "broken home" (PSR at ¶ 29) where he "never knew his own father" (id).  Despite caring deeply for Keith, Mr. Robertson reports that he would manipulate Keith during the separation and divorce and was at times emotionally abusive toward Keith.  (PSR at ¶ 28).  It was reported that, often, Keith's father would attempt to pit Keith against his mother.  (PSR at ¶ 28).  Keith describes his present relationship with his father as loving, but dysfunctional. (PSR at ¶ 28).

Despite his father's reported emotional abuse and manipulative nature, Keith cared very much about him and idolized him and his career.  Philip Robertson had a long political career with the State of Connecticut.  He was elected to the State House of Representatives for the 89th district in 1976, remaining in that office until 1980 when he ran for and was elected to the State Senate. (PSR at ¶ 30).  In 1982, Mr. Robertson was elected minority leader, and in

1984, was elected president pro-tem for the Senate. (PSR at ¶ 30).  Mr. Robertson remained in

the Senate until 1994 when he decided not to run for re-election. (PSR at ¶ 33).

    Keith became interested in politics as a child and started helping with his father's

election campaigns at an early age, (PSR at ¶ 34), from performing various campaign duties

to eventually running the entire campaign himself.  (PSR at ¶ 34).  Keith "always wanted to

be like his father and describe[d] politics as being 'everything to him.'" (PSR at ¶ 34, 35).

Keith's mother reports that "her son was extremely influenced by his father's political career,

much to her own dismay." (PSR at ¶ 36).  As the Probation Office noted in the PSR, ". . .

[Keith Robertson] idolized his father and his political career.  As he began to get older, Mr.

Robertson would find himself getting more and more involved with his father's campaigns,

eventually becoming his father's campaign manager." (PSR at ¶ 45).

    Fortunately, Keith has enjoyed a good relationship with his siblings.  Keith's brother

reports that he was always close to Keith, describing their relationship as close friends. (PSR

at ¶ 30).  Marc Robertson had lived with Keith for the 8 years, until Keith's recent marriage

(see below), and Keith provided him with a place to live while Marc was attending college, all

without Keith expecting anything in return. (PSR at ¶ 30).

    Throughout his entire life, Keith Robertson has established solid roots in Connecticut.

From his birth in 1970 until 1990, Keith lived in Cheshire, Connecticut. (PSR at ¶ 23).  From

1990 to 1992, he lived in Hamden, Connecticut, (PSR at ¶ 23), and then he went to New

Haven to attend Southern Connecticut State University from 1992 to 1994. (PSR at ¶ 23).  In

1994, he moved back to Cheshire and purchased a condominium. (PSR at ¶ 24).  Keith and

his new bride and infant daughter have just moved to West Hartford. Mr. Robertson has lived his entire life in Connecticut, except for a short stint working out-of-state during the week in Philadelphia, but making his residence in Connecticut.

Keith attended Cheshire High School from 1984 to 1988, graduating with a diploma. He attended Mattatuck Community College in Waterbury from September, 1988 to May, 1990, when he transferred to Southern Connecticut State University, where he received his Bachelor of Science degree in political science in August, 1994, graduating with a 2.97 total grade point average. (PSR at ¶ 47). During his college career, Keith worked full time at the Pepsico Corporation in North Haven and attended classes in the evening. (PSR at ¶ 47).

Keith has proven that he is a diligent worker and dedicated employee. In addition to his noteworthy college schedule of working full time during the day and attending evening classes, Keith took and passed a test for an insurance license in the areas of Life and Health. He held this license from 1996 to 2000 when he allowed it to expire. (PSR at ¶ 48). He has also recently completed course work for his MBA at the University of Hartford Barney School of Business, and his degree was conferred on September 25, 2004.

As noted above, he worked at Pepsico/Allied Bottler's in North Haven from September 1988 to January 1995 as a sales merchandiser, selling and stocking shelves at local grocery stores, earning between $25,000.00 to $30,000.00. (PSR at ¶ 56). For four consecutive years beginning in 1991, Keith was awarded the honor of Top Salesman. (PSR at ¶ 56). Keith worked as a personnel recruiter for R.J.S. Associates in Hartford, earning approximately $1,000.00 per month plus commission from May, 1995 to January, 1996, when

he was released from his position due to lack of production. (PSR at ¶ 55). Keith worked as an insurance salesman for Coordinated Financial Planning in Farmington, Connecticut from April, 1996 until October, 1996, earning approximately $6,000.00. (PSR at ¶ 54). He left Coordinated Financial Planning for a job at P.G. Corbin Financial Advisors in November 1996, where he worked as a financial analyst advising governmental agencies on debt, earning approximately $35,000.00 annually. (PSR at ¶ 53).

Keith left P.G. Corbin Financial Advisors in June of 1998 to work as campaign manager and volunteer coordinator with the Ben F. Andrews Campaign in Hartford, earning approximately $625.00 per week. Keith reports that before he was asked to leave this position, he stopped performing his job duties because the position was nothing more than a "go-for" job, which was not what he expected. Additionally, he was not getting paid and eventually discovered the type of person his employer really was and wanted to disassociate himself from Mr. Andrews. (PSR at ¶ 52).

After the Ben F. Andrews Campaign, Keith worked at Security Life of Denver from October 1998 to June 1999, marketing insurance products to retirement communities. (PSR at ¶ 51). Keith worked at a Connecticut satellite office of Security Life of Denver, the Herbert J. Sims Investment Bank in Westport, earning approximately $60,000.00 per year. He left Security Life of Denver when the company relocated his job to Atlanta, Georgia. (PSR at ¶ 51). Despite the job relocation, Keith was hired as an employee of the Herbert J. Sims Investment Bank, earning an annual salary of approximately $60,000.00 and rising to the level of senior associate, where he was responsible for running financial models and

performing financial analyses for the company's clients. (PSR at ¶ 50). Unfortunately, Keith was forced to resign from this position in August, 2000 due to the legal difficulties he was experiencing in the present case. (PSR at ¶ 50). Because his chosen profession in public finance involves securities, an area heavily regulated by the Securities Exchange and Commission (hereafter "SEC"), Municipal Securities Rulemaking Board (hereafter "MSRB") and the National Association of Securities Dealers (hereafter "NASD"), Mr. Robertson has since been unemployable in this field and has been forced to find a new profession due to certain regulatory and compliance issues. Mr. Robertson's underlying conduct in this case, and its ramifications, inhibit future involvement in the field of public finance.

Since December of 2000, Keith has been working for Retirement Living Services in Hartford as a financial analyst responsible for running financial models for retirement communities. (PSR at ¶ 49). He presently earns approximately $77,000.00 a year, plus bonuses. Additionally, from October 2000 to March 2001 he worked at his then fiancé's family business, Hunter Limousine, as a driver, earning approximately $8.00 an hour. Keith left this position due to the publicity surrounding his current criminal charges and the potential negative effect that this could possibly have on the company. (PSR at ¶ 49).

In September of 2003, Keith Robertson was married to Debra Hunter. The couple had plans to marry in August of 2001, however because of the negative reaction from Ms. Hunter's family over Keith's current legal difficulties, the wedding was postponed. (PSR at ¶ 38). Keith and Debra had their first child, Isabel Grace, in August of 2004. Because of a disability suffered by Debra, Keith's presence at home is particularly critical for Debra's

health as well as Isabel's development. <u>See</u> letters from Dr. Maureen Travis and Debra Hunter, attached hereto as Exhibits A and B, respectively.

When questioned about Keith's current legal difficulties, Philip Robertson stated that Keith got "wrapped up in the political power of the campaign," (PSR at ¶ 35), making it to the "inside of the political campaign process." (PSR at ¶ 35). Mr. Robertson describes his son as "very loving and incredibly hard working." (PSR at ¶ 46). Keith's mother describes her son as "intelligent, sensitive, ambitious, caring, a 'do-gooder', . . . [who] was politically ambitious." (PSR at ¶ 46). She feels that Keith was "politically blinded and blind sided" by the Silvester political campaign." (PSR at ¶ 36). Mark Robertson describes his brother as "honest, caring, supportive, helpful, and a 'public servant.'" (PSR at ¶ 46).

Keith's enthusiasm for politics, experience working on his father's political campaigns and his degree in political science all led him to the natural culmination of the start of Keith's own political career. In 1995, Keith was elected as an alternate to the Cheshire Planning and Zoning Board for a four-year term. (PSR at ¶ 37). In 1999, Keith won the election for Cheshire Town Counsel. (PSR at ¶ 37). As part of the Plea Agreement with the Government, Keith has resigned from his political office. Because of his underlying conduct related to his involvement in making improper campaign contributions to the Silvester Campaign through the Andrews Campaign and others, he has also agreed to cooperate with and paid substantial fines to the State Elections Enforcement Commission. (PSR at ¶ 37). Mr. Robertson timely paid $7,000.00 in twenty-five installment payments over a two-year period and now has satisfied his obligation to the State. Mr. Robertson is also working with the IRS and FBI to

resolve his civil tax liability.  It is anticipated that the final figures will be determined shortly and that Mr. Robertson will have paid the taxes owed on the unreported fees paid by the Andrews Campaign before the sentencing hearing.

1.    **The Defendant's Background and Aberrant Behavior Merit a Sentence of Probation.**

A downward departure is appropriate where the conduct of the Defendant is aberrational.  Zecevic v. United States Parole Commission, 163 F.3d 731 (2d Cir. 1998); United States v. Schmick, 21 F.3d 11, 13 (2d Cir. 1994).  In Zecevic, the Second Circuit adopted the position of "the First, Ninth, and Tenth Circuits that aberrant behavior is conduct which constitutes 'a short-lived departure from an otherwise law-abiding life'", and adopted a totality of the circumstances test.  Id. at 736.  The court stated:

> In assessing a defendant's behavior, courts may consider factors such as (1) the singular nature of the criminal act; (2) the defendant's criminal record; (3) the degree of spontaneity and planning inherent in the conduct (4) extreme pressures acting on the defendant, including any psychological disorders from which he may have been suffering, at the time of the offense; (5) the defendant's motivation for committing the crime, including any pecuniary gain he derived therefrom, and (6) his efforts to mitigate the effects of the crime.  This list is not exclusive, and no one factor shall be dispositive.

Id.

Keith Robertson's background and aberrant behavior are bases upon which this Court may and should rightfully consider probation.  A defendant's aberrant acts may be a ground upon which a court can downwardly depart from any criminal sentence imposed.  United States v. Ramirez, 792 F. Supp. 922 (E.D.N.Y. 1992)(Defendant's act of importing narcotics

was " . . . an aberrant one for the defendant. The defendant 'stumbled into something, awkwardly [and] naively'"). Id. at 923, citing United States v. Takai, 941 F.2d 738, 743 (9th Cir. 1991)("Everything points to the conclusion . . . that [defendant] stumbled into something, awkwardly, naively, and with insufficient reflection on the seriousness of the crime . . ."). Takai, above at 743; United States v. Pena, 930 F. 2d 1486, 1494 (10th Cir. 1991). United States v. Caruso, 814 F.Supp. 382, 384 (S.D.N.Y. 1993) (defendant's age, good employment record and likely future compliance with law, taken in combination justified downward departure). See also United States v. Delgado, 994 F. Supp. 143, 145 (E.D.N.Y. 1998), citing United States v. Schmick, 21 F. 3d 11, 13 (2d Cir. 1994).

Here, contrary to his character, Mr. Robertson failed to supply information concerning the cash income received from the Andrews Campaign to the IRS on his 1998 Form 1040 income tax return, a single occurrence or transaction, resulting in a violation of 26 U.S.C. §7203.[6]

Keith Robertson is presently 34 years old, newly married and now the father of an infant child. At the time of the offense, he was only 28 years old and single. Prior to the current charges, Mr. Robertson led an exemplary personal and professional life. Although he experienced substantial difficulty with his parents' divorce and the reported resulting emotional abuse by his father, Keith was raised in an environment where hard work and

_____

6 The defendant recognizes that the Information sets forth a series of three campaign contributions made from July, 1998 through October, 1998 to the Silvester campaign. These contributions were made, however, within a finite period of time during one particular election campaign, representing a common nucleus of operative facts. Both before and after this brief time period, Mr. Robertson lived "an otherwise law-abiding life," Zecevic, above, as more fully set forth below.

dedicated public service were to be admired and pursued. Throughout the years, Keith's employment record indicates a history of continuous hard work dating back to his college days, where he worked full time during the day and attended classes in the evening. (PSR at ¶ 47). (See also generally PSR at ¶¶ 49-55). Even more recently, Keith has attained a masters degree in business at the University of Hartford by attending classes at night.

The political career that Keith's father had in the Connecticut House of Representatives and the State Senate was always a model for Keith to follow, which he did when he was elected to his position as an alternate to the Cheshire Planning and Zoning Board, followed by his election to the Cheshire Town Council, and then to a position on the Cheshire Republican Town Committee (from which he was removed as a result of this case). When the opportunity to become involved in the Ben F. Andrews statewide campaign for Secretary of State arose, Keith saw the opportunity to advance his own political career, his passion. Unfortunately, Keith got "wrapped up in the political power of the campaign" once he made it to the "inside," (PSR at ¶ 35), and became "politically blinded," (PSR at ¶ 36), by the whole process, eventually doing things which had, up to now, been quite unlike him to do.

It is clear from Keith Robertson's employment history, academic career and commitment to public service that he is a hardworking, driven individual. He also has no criminal record other then the instant offense. It is therefore evident that the underlying conduct which resulted in this case represented "a short-lived departure from an otherwise law-abiding life" due to Keith's political ambition fueled by his idolization of his father and naiveté. Zecevic, above; see also United States v. Jagmohan, 909 F.2d 61 (2d Cir. 1990)

(district court granted downward departure based on defendant's solid employment record and naiveté displayed in committing the offense).

In retrospect, Keith Robertson has come to realize the error of his ways in engaging in the conduct that resulted in the present charges. This realization was made possible by comparing his personal and professional achievements at the time the offense was committed, with the serious detrimental effect that his conduct has had on his life and career as a result. Prior to his plea in this case, Keith had a very promising professional career in the field of public finance, and a successful political career in his own right, the culmination of his many years of hard work, study and dedication, and the fulfillment of a dream first conceived when Keith was a child helping with his father's own successful political career. (PSR at ¶ 34, 35). These positions were a source of great accomplishment and pride for Keith. Keith was working as a senior associate in a good job at Herbert J. Sims Investment Bank in Westport and had plans of pursuing a very lucrative position at a major Wall Street investment firm that would have secured his financial future and that of his family into the distant future. At the same time, his political successes were reaching the culmination of a lifetime's passion for politics, a family legacy passed down to Keith from his father.

As noted above, when his involvement in the Ben Andrews and the Silvester matters became public, however, Keith was forced to resign his position as an investment banker at Herbert J. Sims Investment Bank and change his career path because a job in the field of public finance was no longer possible. Because of Mr. Robertson's legal difficulties, SEC, MSRB and NASD regulations inhibit Mr. Robertson from continuing to work with securities

in the public finance field  Toward that end, Mr. Robertson was dropped from consideration for a position at the Wall Street investment firm, ending his plans for a secure financial future. Presently, however, because he is unable to work in the field of public finance, Keith is working for Retirement Living Services in Hartford as a financial analyst, earning approximately $77,000.00 a year.

Likewise, he was forced to resign his elected political office in disgrace and was removed in humiliation from his other appointed political position.  Most importantly, Keith has forever lost the very things that he once cherished: his good name and the public trust. Perhaps the greatest punishment with which Keith can be sentenced is the daily realization that he has nobody to blame but himself for his current predicament, his loss of community stature and personal and professional respect that he once held so dear.  Having accomplished his professional and political success at a relatively young age, the loss of employment and political standing and the related humiliation which Keith has experienced, already had a far-reaching, detrimental impact on his life and that of his young family.

Despite this strong adversity, however, Keith has begun to reconstruct his life.  He has maintained steady employment at Retirement Living Services, completed course work for an MBA degree, reconciled with his fiancé, gotten married and started a family of his own. Keith has also taken notable steps toward performing public service, this time in a volunteer capacity.  He currently volunteers for CRIS, a radio program for the blind, where he assists in the broadcast of informational programs for the visually impaired.  Keith's personal efforts are now focused on his family.  His wife, who just gave birth to their first child, is disabled

and cannot work, see Exhibits A and B attached hereto, and therefore Keith's continued presence at home is vital. See also Letters from Mr. Robertson and David Fields, respectively attached hereto as Exhibits C and D.

### 2. The Defendant's Personal Circumstances and Significant Family Ties Merit a Sentence of Probation

This Court has recognized on numerous occasions that personal circumstances outside the heartland of the guidelines may support a downward departure. Given that, we submit that the rationale of these cases militate in favor of a sentence of probation. The legal authority to support a departure on this basis is found in United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996), where the Second Circuit recognized that a district court may consider a defendant's personal circumstances in deciding whether a case warrants departure from the Guidelines. See also United States v. Adelman, 168 F.3d 84, 86-87 (2d Cir. 1999). Keith Robertson's personal circumstances are bases upon which this Court may and should rightfully grant a sentence of probation.

The effect that any incarceration will have on Keith's wife and newborn child is also a factor the Court may and should take into account in determining whether to impose a sentence of probation. The Second Circuit has recognized that the needs of family members are an established ground for a downward departure. See e.g., United States v. Galante, 111 F.3d 1029 (2d Cir. 1997), reh'g, en banc, denied, 1997 U.S. App. LEXIS30343 (2d Cir. 1997); United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992); United States v. Alba, 933 F.2d 1117, 1122 (2nd Cir. 1991) (upholding a departure based on the existence of family ties

and obligations, recognizing effects of incarceration on defendant's children, parent, and grandparent); United States v. Ayala, 75 F. Supp. 2d 126 (1999) (defendant entitled to downward departure based on his *strong family ties,* the fact that one of his children was exceptionally dependent upon him, and despite this background, defendant "has remained committed to a nuclear family unit and has met all of his familial responsibilities . . .") Id. at 139; see also United States v. Rose, 885 F.Supp. 62 (E.D.N.Y. 1995) (purpose of departure is to protect innocent family members who need the defendant); United States v. Deriggi, 893 F.Supp. 171, 182 (E.D.N.Y. 1995), aff'd, 72 F.3d 7 (2d Cir. 1995)  (the desire not to inflict undue harm on innocent family members is a universal sentencing consideration).

Compelling reasons exist in this case for the court to grant a sentence of probation based on Keith Robertson's significant family ties and obligations.  As stated previously, Keith and his wife initially intended to marry in August, 2001.  However, because of the negative reaction by Debra's family over this case, Keith and Debra called off the wedding. They did eventually marry in September of 2003.  Keith and Debra had their first child on August 12, 2004. Additionally, Keith's wife suffers from a disability which prevents her from working and makes Keith's presence at home critical for her continued health and for helping to care for their newborn child. See Exhibits A and B attached hereto.  For example, in the past, when Keith has gone on short business trips out-of-state, Mrs. Robertson has experienced severe panic attacks.  Now, in addition to coping with her disability, Mrs. Robertson must care for their infant daughter.  Like the defendants in Alba and Ayala, Mr. Robertson plays a critical role in caring for his daughter, Isabel Grace.  See United States v.

Owens, 145 F.3d 923, 926 (7th Cir. 1998) (court granted downward departure where defendant took "an active role in raising his children and supporting his family"). The importance of a strong, nurturing and continued parental influence by Keith in Isabel's life cannot be overstated at this point in Isabelle's life. Isabelle's proper development, and perhaps even her survival, may well be dependent upon Keith's presence at home. See United States v. Flowers, 983 F.Supp. 159, 161 (E.D.N.Y. 1997) ("lengthy prison term would separate defendant from her daughter during some of the most important years of the child's life.")

The decisions recognizing an individual's background, including a defendant's extraordinary family ties and circumstances, are consistent with and faithful to the statutes implementing the Guidelines. Those statutes provide that the "court, in determining the particular sentence to be imposed, shall consider . . . the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Any sentence of incarceration in this matter would indeed have a far-reaching detrimental effect on Keith's wife and child, innocent family members who are exceptionally dependent on Keith. Ayala, Deriggi, above. Given the traumatic and detrimental effect that a term of imprisonment would have on Debra and Isabelle, Mr. Robertson respectfully requests the Court grant his prayer for leniency in its determination of an appropriate sentence.

## IV.    Conclusion.

For all the above reasons, Keith Robertson respectfully requests the Court impose a sentence of probation in this case.

Respectfully Submitted,
Defendant, Keith Robertson

By:     _____

Alan J. Sobol
 Fed. Bar No. CT00955
**O'CONNELL, FLAHERTY**
   **& ATTMORE, L.L.C.**
280 Trumbull Street, 23rd Floor
Hartford, CT 06103-3598
(860) 548-1300

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing Memorandum in Aid of Sentencing was hand-delivered or served by mail to the following parties and counsel of record this 8th day of December, 2004:


Nora R. Dannehy, Esq.
Assistant United States Attorney
Federal Building and U.S. Courthouse
United States Attorney's Office
450 Main Street
Hartford, CT 06103

Joseph Zampano
U.S. Probation Officer
United States District Court
Federal Building and U.S. Courthouse
450 Main Street, Room 735
Hartford, CT 06103


Alan J. Sobol

**<u>Exhibit A</u>**

Letter from Dr. Maureen Travis

# Maureen Travis, Ph.D.

PSYCHOLOGIST
25 PELHAM ROAD
WEST HARTFORD CT 06107
PHONE (203) 236-0140

November 30, 2004

Honorable Ellen Bree Burns
Senior United States District Court Judge
District of Connecticut
141 Church Street
New Haven, CT 06510

Dear Judge Burns:

Debra Robertson has been a patient of mine for two years. I am treating her for Post Traumatic Stress Disorder. At this point in her life, it is stressful for Mrs. Robertson to be home alone, especially at night. If Mr. Robertson were to be absent from the home for any significant period, it would negatively impact the work we are doing.

Mr. and Mrs. Robertson recently had a child. If Mrs. Robertson were to have complete care of the child, I fear that she may experience Post-Partum Depression. This often happens to patients who already suffer from PTSD.

At particularly stressful moments, Mrs. Robertson requires Mr. Robertson's assistance in taking care of their child. We are working on very sensitive issues that bring up significant emotional trauma for Mrs. Robertson. She has no other social resources on which to call.

I cannot stress enough to you how important it is for Mrs. Robertson's mental well being that she physically has the support of her husband.

Please feel free to call me if you would like to discuss this matter. Mrs. Robertson has given me complete freedom from our confidentiality agreement.

Sincerely,

Maureen Travis, Ph.D

**<u>Exhibit  B</u>**

Letter from Debra Robertson

December 1, 2004


Honorable Ellen Bree Burns
Senior United States District Court Judge
District of Connecticut
141 Church Street
New Haven, CT 06510


Dear Judge Burns,

I am writing in an attempt to share with you the critical importance that my husband's physical presence has in my life, although I am unsure if there are words strong enough to describe my need.

I currently fit most or all of the clinical criteria for Post Traumatic Stress Disorder due to extremely disturbing and painful events that personally affected me throughout my childhood and into adulthood. I suffer from anxiety and panic attacks primarily when I know that my husband and I will be separated. In the past two years when Keith was forced to travel for work overnight I would be sick for days leading up to the time he would be away. When he was away, my usual routine was to not only lock and barricade my doors with furniture but to also sleep with a large kitchen knife under my pillow. Due to the trauma I suffered, I am constantly in fear of an intruder to the point that, on many occasions, I have waited until my husband returned from work before I would even take a shower. In the past few years I have aggressively sought therapy both one on one and through groups, however this will be a lifetime healing process for me and Keith is a major part of that process.

We have recently had a baby and due to my past trauma I am a candidate for Post Partum Depression. I, therefore, continue to attend therapy sessions twice a week. It is imperative that I have not only the emotional but physical support of my husband to help me care for our daughter. Keith not only shares the responsibility of caring for our baby but thoroughly enjoys taking her out on his own or spending one-on-one time with her at home, both of which allow me to have some time to myself to catch up on much needed rest and reflection. His presence alone has an amazingly calming affect on me and has always given me the strength to face each new day. Keith's presence also has an amazing affect on our daughter Isabel Grace and their bond from the day she was born has brought tears to people's eyes.

Keith is and always has been the one person I can unconditionally count on for support. He is my rock, my stronghold, and my angel from God. I rest easy only when he is lying beside me at night or readily available to see me by day. I do not know what I would do without him.

Keith is a kind, honest, loving man who has never once blamed others for his past mistakes but instead has always taken full responsibility for his actions. From the moment I met him I knew in my heart that he was the kind of man worth standing beside through the good and the bad that life hands us. His morals and values run deep and true. I am proud to call him my husband and the father of my child.

Thank you for taking the time to read my heartfelt words. Please feel free to contact me for any further explanations you may like.

Most Sincerely,

Debra Robertson

**Exhibit  C**

Letter from Keith Robertson

# Keith Robertson

127 Four Mile Road
West Hartford, CT  06107
(860) 206-4181

December 8, 2004

Honorable Ellen Bree Burns
Senior United States District Court Judge
District of Connecticut
141 Church Street
New Haven, CT 06510

Dear Judge Burns:

I am writing you this letter to help you understand a little bit about me and my actions that lead to my guilty plea of failing to file information on February 28, 2001. My plea is the result of mistakes I made in 1998 when I worked on a statewide political campaign and in 1999 as I was preparing my income tax return for the previous year.

Looking back, I can't give you or anyone else a good explanation as to why I made the mistakes I made. I was in a situation that, for a lack of better words, was over my head. I was involved in a statewide campaign and was so excited to be working on a campaign at that level that my judgment was skewed. I did things that I knew were wrong but made the decision to do them anyway. I have no excuses for my actions and do not blame anyone for making me do things that I knew to be against the law. I wish I could turn back the clock and do things differently, but I can't. All I can do is make up for my mistakes in the present and in the future.

Since I plead guilty several years ago, I have tried very hard not only to make up for my mistakes but also to rebuild my reputation and to re-establish myself as someone who can be trusted and relied upon. I truly feel that the mistakes I made are exactly that, mistakes. They do not define who I am and were very much out of character for me. I have always tried hard to make good decisions, however, many of the decisions I made in relation to my work on the campaign were just wrong.

The part that bothers me the most about my actions is not only did my actions violate the law; they contributed to the public's distrust of their government and government officials. Knowing that I contributed to this makes me sick to my stomach. I grew up believing so strongly in our government and dreaming of the day that I could represent the people as an elected representative. Even as a young child, I knew that the people did not trust their elected officials and all I wanted for my life was to be someone the public could look to, to give them faith that their system still worked. I did just the opposite. I failed even before I had a chance to make a positive impact. For this, I am so sorry. I completely let myself down and everyone else who believed in me, including my family and friends.

Letter to Judge Burns
December 8, 2004
Page 2

The pain of knowing I let everyone down who believed in me is very hard for me to handle, but it has opened my eyes to what is really important in life. Since I plead guilty, I have gotten married and had a child. My wife and daughter, Isabel Grace, mean the absolute world to me and I try everyday to be the best husband and father I can possibly be. I have maintained my job consulting to not-for-profit organizations that are furthering their missions by building retirement communities to serve the elderly. Helping not-for-profit organizations further their mission, I believe, provides a very good service to society, and it also makes me feel as if I am using my skills and talents to benefit others. I also volunteer with CRIS radio, which is radio for the blind. I read magazines and newspapers on the air so that the blind can enjoy their favorite periodicals. I am trying to do what I can to make up for my mistakes. I also do these things because I enjoy them.

I would like to ask you to consider these things as you pass judgment on my past indiscretions. As I mentioned before, what I did was a mistake. It was completely out of character for me to do what I did. I can assure you it will never happen again.

Sincerely yours,

Keith Robertson

**<u>Exhibit  D</u>**

Letter from David Fields

399 Loudon Road
Loudonville, NY 12211
December 3, 2004

To whom it may concern:

I am writing you to express my opinion about the character of Keith Robertson.

I was a senior investment banker responsible for supervising Keith while he was employed at Herbert J. Sims & Co from 1997 - 2000. The nature of the business at Herbert J. Sims was to secure financing for not-for-profit senior living organizations including nursing homes and retirement centers. Keith's abilities allowed him to quickly expand his responsibilities at the firm. His dedication to the firm and his job exceeded all expectations. The outlook for Keith was a promising career in investment banking. It was very disappointing to see him leave especially with the potential he has.

Keith and I have been friends since his departure from the firm four years ago. He has continued to maintain his focus to serve the elderly working with a company specializing in the development of long-term care and retirement facilities for not-for-profit organizations. I have since moved on to lead my firm's practice in financing not-for-profit senior living organizations.

I believe the error in Keith's judgement in the past is not a reflection of the person I have known nor who he is today. Allowing Keith to continue his good work ethic will be a benefit to everyone. I have been looking forward to closure on the judgement of Keith's past error so he can move on with his life. Keith has great potential so I look forward to him moving past this turning point in his life.

Keith is a good person and one I am happy to call friend.

Sincerely;

David Fields